611 So.2d 1294 (1992)
Tanya REYNOLDS, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Allstate Insurance Company, Appellees.
No. 91-2427.
District Court of Appeal of Florida, Fourth District.
December 30, 1992.
Rehearing and Certification Denied February 8, 1993.
*1295 David J. Glatthorn, West Palm Beach, for appellant.
Eugene H. Brandt of Peterson and Bernard, West Palm Beach, for appellees.

FASTRACK APPEAL
GUNTHER, Judge.
In this fastrack appeal, Tanya Reynolds seeks reversal of a summary final judgment entered in favor of State Farm. The only issue on appeal is whether Tanya is entitled to recover for her "psychic injury, emotional pain and suffering and grief" due to the death of John Oswald, her boyfriend/fiance.
Both parties agree that since State Farm sought a partial summary judgment on only one issue, the trial court erred in entering the summary final judgment on all issues. Thus, the parties acknowledge that on remand, issues remain as to the amount of damages Tanya suffered for her physical injuries and her pain and suffering which were not associated with John Oswald's death.
Tanya sued State Farm, her uninsured motorist carrier, after an uninsured motorist struck an automobile she was driving. Tanya's passenger, Oswald, her steady boyfriend for over six years, was killed in the accident. Tanya was knocked unconscious in the impact, and was told of Oswald's death several hours later in the hospital when she awoke. She is amnesic for the events preceding, during and after the accident. Thus, she has no recollection of the collision or the injuries Oswald sustained.
As a result of the accident, Tanya suffered a concussion and a fractured clavicle, as well as numerous contusions on her legs. In addition, for almost a year after the accident, she did not have any menstrual periods. Approximately eleven months after the accident, she told her doctor of this problem and he prescribed medication for her.
In his deposition, the doctor testified that the emotional distress of physical injuries and the loss of a loved one can cause an interruption in a young woman's menstrual cycle. He concluded that the emotional distress associated with the accident was the cause of Tanya's suppressed menstrual cycle. The doctor also stated that her monthly cycle had resumed and that he did not think she was actually physically injured as a result of her suppressed menstrual cycle.
Oswald's mother testified that Tanya and her son had had a close relationship for more than five years. She added that Tanya had spent considerable time with the Oswald family and that she was as close to her as if Tanya was already a member of the family. The mother stated that Tanya and John undoubtedly would have married if the accident had not occurred.
Tanya referred to Oswald as her fiance. However, she admitted that they had not exchanged rings, that they had not actually set a date for the wedding, that they had not established any joint accounts or made any financial commitments together, and that they had not become married by the time of the accident.
Tanya sued for damages arising from her physical injuries, as well as damages for her "psychic injury, emotional pain and suffering and grief" due to Oswald's death. State Farm moved for summary judgment on the claim based on Oswald's death and argued that Tanya was not entitled to recover any damages for Oswald's death. It was stipulated that the driver of the other vehicle was negligent, that Tanya was not negligent, that she was using her seat belt, and that she had sustained injury from the accident. In granting the motion, the trial court agreed with State Farm that Tanya cannot recover damages for her "psychic injury, emotional pain and suffering and grief" due to Oswald's death. Tanya disagrees with the ruling and argues that the trial court reversibly erred in granting the summary final judgment.
The resolution of this case involves examining Florida's "impact rule." The *1296 impact rule is the long-standing rule that a plaintiff must suffer a physical impact before recovering for emotional distress caused by the negligence of another. Champion v. Gray, 478 So.2d 17 (Fla. 1985). In essence, the impact rule stands for the proposition that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact. Thus, the impact rule precludes the recovery of damages for negligent infliction of emotional distress unless the emotional distress arises directly from the physical injuries sustained by the plaintiff in the impact. As discussed below, Champion modifies this rule to a very limited extent.
In addressing the "impact rule," Tanya offers several arguments in support of her contention that she can recover for her "psychic injury, emotional pain and suffering and grief" due to Oswald's death. First, Tanya argues that her claim for psychological damages due to Oswald's death is not barred by the "impact rule." She maintains that since she did suffer a physical impact (she was injured in the accident), she is thus entitled to recover for the emotional distress due to Oswald's death. However, she fails to cite any case law that supports her argument on this point. Her second argument is that even if the impact rule does apply, a question of fact remains as to whether she presented a claim cognizable under Champion.
State Farm counters that Tanya's claim for damages due to Oswald's death is barred for the reasons that the impact rule is applicable and Tanya's claim does not fall within the exception created by Champion. We agree and find that Champion and Ferretti v. Weber, 513 So.2d 1333 (Fla. 3d DCA), cause dismissed, 519 So.2d 986 (Fla. 1987), clearly support the trial court's ruling that Tanya cannot recover for her "psychic injury, emotional pain and suffering and grief" due to Oswald's death.
Tanya's first argument, that since she suffered an impact in the accident which killed Oswald, she can recover damages for emotional distress due to Oswald's death, is not supported by the law. To agree with her reasoning would create for every injured accident victim a cause of action for negligent infliction of emotional distress due to the death or injury of any other person involved in the accident. Because we reject Tanya's argument on this point, we conclude that the impact rule is applicable to the facts of the instant case.
Tanya contends that even if the impact rule is applicable, the trial court erred in granting the summary judgment because a jury question remains concerning the closeness of her emotional attachment to Oswald. She argues that Champion modifies the impact rule and that she meets the requirements set forth in Champion. According to Tanya, there is evidence that she (1) suffered a significant discernible physical impairment (interruption of menstrual cycle), (2) was involved in the event causing the original injury (as driver of the motor vehicle involved in the accident in which Oswald was killed), and (3) had an especially close emotional attachment to the directly injured person (Oswald, her steady boyfriend/fiance).
Champion, which modifies the "impact rule" to a very limited extent, defines the circumstances that must first exist before a plaintiff can recover damages for emotional distress caused by the negligent death or injury of another person. In Champion, the supreme court allowed, with expressed limits, recovery for the physical consequences resulting from the mental or emotional stress the defendant's negligence caused even though the plaintiff experienced no physical impact. The supreme court stated that "we now conclude that the price of death or significant discernible physical injury, when caused by psychological trauma resulting from a negligent injury imposed upon a close family member within the sensory perception of the physically injured person, is too great a harm to require direct physical contact before a cause of action exists." 478 So.2d at *1297 18-19, (emphasis added). Champion specifically held "a claim exists for damages flowing from a significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing that injury, is foreseeably injured." Id. at 20. In a footnote to the holding, the supreme court stated that "we reiterate that a claim for psychic trauma unaccompanied by discernible bodily injury, when caused by injuries to another and not otherwise specifically provided for by statute, remains nonexistent." Id.
We interpret Champion as requiring the existence of a familial relationship between the plaintiff and the injured person before the plaintiff can recover damages for any psychic trauma resulting from the negligent injury of that person by another. In our view, any recovery is further limited to those instances where the deceased or injured person is not only a close family member but is one with whom the plaintiff has a relationship with an especially close emotional attachment. In other words, simply being related is not enough to permit a claim for emotional distress; the plaintiff and the injured person must be related and the plaintiff must have an especially close emotional attachment to the injured or deceased person. Likewise, in interpreting Champion, our sister court held that if no legal relationship existed between the plaintiff and the directly injured person, then no cause of action for emotional distress could be maintained. Ferretti.
In the instant case, Oswald is clearly not a close family member. Thus, Champion and Ferretti preclude Tanya from recovering damages for "psychic injury, emotional pain and suffering and grief" due to Oswald's death. Accordingly, since Tanya cannot satisfy the Champion relationship requirement that Oswald be a close family member, no jury question arises or remains about the extent of Tanya's emotional attachment to Oswald. Therefore, we conclude that Tanya has no claim cognizable under Champion.
In summary, we affirm the trial court's ruling because Tanya has no claim cognizable under Champion and thus, the "impact rule" bars her claim for "psychic injury, emotional pain and suffering and grief" due to John Oswald's death. We remand for the trial court to determine the amount of damages Tanya suffered for her physical injuries and her pain and suffering which were not associated with John Oswald's death.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
HERSEY, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
An uninsured motorist struck an automobile driven by Tanya Reynolds. Her passenger, John Oswald, who was also her fiance and steady boyfriend for over six years, was killed in the accident. She was knocked unconscious in the impact, and was told of Oswald's death several hours later in the hospital when she awoke. She suffered a concussion and a fractured clavicle, as well as numerous contusions on her legs. As a result of her grief and emotional suffering from the death of her fiance, she also lost her menstrual period for nearly a year after the accident.
Oswald's mother testified that Tanya had had a close relationship for more than five years with her son. She added that Tanya had spent considerable time with the Oswald family and that she was as close to her as if she were already a member of the family. The mother said that Tanya and John undoubtedly would have gotten married if the accident had not occurred. Tanya admitted that she and John had not become married by the time of the accident, that they had not actually set a date for the wedding, that they had not exchanged rings, and that they had not established *1298 any joint accounts or made any financial commitments together.
She sued State Farm, her uninsured motorist carrier, for her own physical injuries, as well as for the "psychic injury, emotional pain and suffering and grief" caused by the death of Oswald. The parties stipulated that the driver of the other vehicle was negligent, that Tanya was not negligent, that she was using her seatbelt, and that she had sustained injury from the accident. State Farm moved for summary judgment on the issue of the psychic injuries associated with Oswald's death. The trial court agreed with State Farm. I think we should reverse.
In moving for a summary judgment, State Farm advanced two principal arguments. First, it argued that a fiancee is not among the limited class of survivors allowed to recover damages under the Florida Wrongful Death Act, sections 768.16-768.27, Florida Statutes (1991). Second, it argued that Reynolds has failed to plead and prove that she has sustained a demonstrable physical injury connected with her emotional distress. Because the trial judge did not articulate the basis for his ruling, I indulge the assumption that he agreed with all of the grounds asserted.
To deal with the Wrongful Death Act first, I do not view it as controlling. Plaintiff did not bring her action under the Act. She did not claim to be a survivor within the meaning of the Act or claim any of the kinds of damages uniquely allowed under its provisions. Even if she had, she has also pleaded for damages for her own injuries, which are not subject to the Act. Her claim against the negligent driver, and thus equally against her own uninsured motorist insurer, is an ordinary personal injury claim for herself, not involving the death of the claimant. The fact that she wants to include an additional item of damages for the psychic pain resulting from the loss of her fiance does not change the essential nature of her complaint to a Wrongful Death claim. If State Farm has a legal avoidance of her claim, it is not under the Wrongful Death Act.
Her claim is very much akin to the plaintiff's claim in National Car Rental System Inc. v. Bostic, 423 So.2d 915 (Fla. 3d DCA), petition for rev. denied, 436 So.2d 97 (Fla. 1983). Indeed, the facts are strikingly similar, except that the relationship of the occupants of the vehicle there was mother and son. An added ingredient, too, is that the son there regained consciousness before help arrived and actually witnessed his mother's death while he was helpless, because of his own injuries, to aid and comfort her. This added ingredient, however, is irrelevant to the present case, dealing as it so obviously does with the weight, rather than the nature of the claim.
The trial judge in Bostic allowed the psychic injury claim to go to the jury and the defendant appealed. The Third District affirmed that decision but reversed because of an improper closing argument. In a concurring opinion, Judge Daniel S. Pearson expressed the conclusion that
we are able in this case to avoid the impact of the impact rule which otherwise would have prevented Bostic from recovering damages for his emotional scars caused by watching his mother die beside him in the car.
423 So.2d at 918. He based that on his conclusion that Bostic's emotional injuries were themselves derived from his own physical injury which, in turn, rendered him unable to respond to his mother's cry for help. That was certainly true, but his claim, like Reynolds' here, was equally founded on the fact of being there when the death blow was struck and thus suffering the horror of directly experiencing the same events which result in the death of a loved one.
It certainly can be plausibly argued, as indeed Reynolds does, that her direct participation in the impact of the death blow gives her a natural claim for all of the injuries she has suffered from it. It was more than her mere presence at the scene that gives her right to sue for emotional trauma; it was the direct, physical impact upon her, she argues, as well as the demonstrable *1299 physical injuries she indisputably has suffered, that gives her the right to claim psychic pain and suffering too. The physical impact, she argues, of the accident itself removes, as it were, the reasons for any application of the impact rule.
I readily confess that, to me, this is an argument teeming with logical charm. Florida's views on the impact rule have changed markedly since Judge Pearson penned his conclusions in Bostic. In Champion v. Gray, 478 So.2d 17 (Fla. 1985), the Supreme Court modified the rule and recognized a specific cause of action for psychic injury even where there has been no physical impact to the plaintiff. As the court explained its holding:
We hold that a claim exists for damages flowing from a significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing that injury, is foreseeably injured. [e.s.]
478 So.2d at 20. Reynolds thus argues that, even if the impact rule applies, there is a question of fact as to whether she meets the criteria to fit within Florida's modified version.
State Farm relies on Ferretti v. Weber, 513 So.2d 1333 (Fla. 3d DCA), dismissed, 519 So.2d 986 (Fla. 1987), to argue that even our new rule bars her psychic injury damages. There the Third District concluded that without a marriage there is no legal relationship between the plaintiff and the deceased and, therefore, no cause of action for emotional distress, citing Champion. 513 So.2d at 1333. The court did not discuss the facts in Ferretti, other than to say that the plaintiff's "live in ladyfriend was killed." Id.
I agree with the notion that, simply because the deceased and the claimant shared living space, they will not have thereby satisfied the Champion requirement of a significant relationship. Reynolds argues, however, that the length and character of her relationship with Oswald meets the essential nature of the kind of ties required by Champion. She contends, in other words, that the significance and closeness of the actual ties between her and her fiancee satisfy the legal threshold of Champion and thus create a question of fact for the jury to decide, thereby precluding summary judgment.
In modifying the impact rule of Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974), the court cited with obvious approval the factors used by the California Supreme Court in a similar case. See Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968). Among these were "[w]hether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." 68 Cal.2d at 740, 441 P.2d at 920, 69 Cal. Rptr. at 80. To be sure, Champion had earlier characterized its rationale as applying to "a close family member." 478 So.2d at 18. In both Champion and Dillon, the relationship was mother/son. But as Justice McDonald added:
Another factor in the foreseeability requirement is that the secondarily injured party must have an especially close emotional attachment to the directly injured person. A child, a parent, or a spouse would qualify; others may or may not, depending on their relationship and the circumstances thereof. [e.s.]
478 So.2d at 20. In his concurring opinion, Justice Alderman noted that the court was unable to fashion a "rigid hard and fast rule," setting the limits for every psychic injury claim, explaining:
We have listed several relationships which may qualify. These, however, are not exclusive; other relationships may qualify. Each one will be closely scrutinized on a case-by-case basis. The closer the tie in relationship or emotional attachment, the greater the claim for consideration will be. [e.s.]
478 So.2d at 22.
I view the court's decision, by itself and as explained by Justice Alderman, to add a *1300 category of persons joined by ties beyond an entirely formal, legal relationship formed by blood or, for that matter, marriage vows. I think that the court intended to leave open for later development in the cases the potential of allowing psychic injury claims by persons whose connection to the deceased person is more than incidental, yet less than solemn, where the ties are not insubstantial or ceremonial. The court appears to have left the door ajar for the occasional circumstance where the link, though not traditional or decorous, is real, meaningful and serious.
I do not mean to suggest that everyone who sets up housekeeping or keeps company with another is entitled to offer evidence to a jury on a psychic injury claim. Champion appears to require allegations of fact setting forth a close relationship or emotional attachment to satisfy the legal threshold. The trial court must, therefore, first exercise legal judgment as to whether the ties alleged meet the bare minimum of sufficiency. Once this minimum, legal requirement is met, as here, the issue as to whether the relationship is close enough, or the attachment is emotional enough, are for the jury. To the extent that Ferretti requires a formal, "legal relationship" in all cases, I believe it has misinterpreted Champion.