## LAWRENCE YOVINO *v.* BIG BUBBA'S BBQ, LLC, ET AL.

Superior Court, Judicial District of New London
File No. CV-05-4002497S

Memorandum filed March 17, 2006

*O'Brien, Shafner, Stuart, Kelly & Morris*, for the plaintiff.

*Howd & Ludorf*, for the defendants.

JONES, J. In an amended complaint, filed on July 12, 2005, the plaintiff, Lawrence Yovino, chronicles his involvement and claimed injuries from a motor vehicle accident. He alleges that on November 17, 2004, he was driving his car on Route 2, a public roadway in Ledyard. His fiancee, Mia Bourque, was sitting beside him in the passenger seat. He further alleges that the defendant Big Bubba's BBQ, LLC (Big Bubba's BBQ), and its permittee, defendant Anthony J. Mazzola, operated an establishment known as Big Bubba's BBQ that the plaintiff claims sold inordinate amounts of alcohol to an intoxicated Guillermo Contreras, one of its patrons. He specifically alleges that Big Bubba's BBQ plied Contreras with liquor late in the evening of November 16 and early in the morning of November 17, 2004, between the hours of 10 p.m. and 12:30 a.m.

The plaintiff alleges that thereafter, on November 17, 2004, Contreras drove his vehicle into the rear section of the plaintiff's car, causing it to roll over and stop

on an embankment along Route 2. The collision, the plaintiff claims, resulted in his suffering injuries and losses. In addition, the plaintiff alleges that the collision resulted in the death of his fiancee, to whom he had given his right kidney. The amended complaint is set out in three counts.

The matter now before the court is the defendants' motion to strike count three of the amended complaint on the ground that it fails to state a claim for bystander emotional distress because such a claim does not extend to a fiancee of an injury victim.

I

RECOGNIZED STANDARD FOR REVIEW

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003).

II

BYSTANDER EMOTIONAL DISTRESS

A cause of action for bystander emotional distress was first recognized by our Supreme Court in *Clohessy* v. *Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996) (en banc). The court held "that a bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has

occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Id., 56.

In their memoranda of law in support of their motion to strike, the defendants argue that the requirement that one be "closely related" to the victim means that recovery for emotional distress can only be grounded in a family relationship. The plaintiff counters by arguing that a claim for bystander emotional distress does not require that the bystander and victim be family relations. The plaintiff contends that the relationship between himself and Bourque was an extremely close one and directs the court's attention to their intention to be married, as well as the plaintiff's donation of a kidney to her.

The sole issue before the court is whether a relationship between an engaged couple may be sufficient to state a claim for bystander emotional distress.

In recognizing a claim for bystander emotional distress, the court in *Clohessy* expressed a concern that "the application of pure rules of foreseeability could lead to unlimited liability." Id., 50. Before adopting the four conditions for recovery, the court explained that "[i]t would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends." (Internal quotation marks omitted.) Id.

In adopting the "closely related" condition to recovery, the *Clohessy* court stated: "The class of potential plaintiffs should be limited to those who because of their relationship suffer the greatest emotional distress." (Internal quotation marks omitted.) Id., 52. The court, however, explicitly decided to "leave to another day the question of what other relationships may qualify." Id. Since *Clohessy*, neither our Supreme Court nor our Appellate Court has addressed the issue of what relationships are sufficient to be considered "closely related." Furthermore, there is a division of authority among the judges of the Superior Court as to whether a relationship between a couple engaged to be married is sufficient to maintain an action for bystander emotional distress. See *Izquierdo* v. *Ricitelli*, Superior Court, judicial district of New London, Docket No. 566731 (March 15, 2004) (36 Conn. L. Rptr. 698) (*Hon. D. Michael Hurley*, judge trial referee) (holding that relationship between cohabitating engaged couple may be considered "closely related"); *Miller* v. *Curtis*, Superior Court, judicial district of Hartford, Docket No. CV-99-0587266S (October 22, 1999) (25 Conn. L. Rptr. 565) (*Booth, J.*) (same); contra *Biercevicz* v. *Liberty Mutual Ins. Co.*, 49 Conn. Sup. 175, 865 A.2d 1267 (2004) (holding that claim for bystander emotional distress does not extend to claim made by plaintiff fiancee of decedent).

This division of authority parallels the different approaches taken by states throughout the country, as they have struggled in, as described by one commentator, an " 'unparalleled state of confusion' " over issues such as what relationships will suffice for a claim of bystander emotional distress. R. Rhee, "A Principled Solution for Negligent Infliction of Emotional Distress Claims," 36 Ariz. St. L.J. 805, 806 (2004). Courts have arrived at different conclusions regarding whether the relationship between an engaged couple may be the basis of an emotional distress claim. Some courts have

held that the relationship between an engaged couple is sufficient for a claim of bystander emotional distress. See, e.g., *Graves* v. *Estabrook*, 149 N.H. 202, 818 A.2d 1255 (2003); *Dunphy* v. *Gregor*, 136 N.J. 99, 642 A.2d 372 (1994); *Magruder* v. *Sawyer*, United States District Court, Docket No. Civ. 99-0077-B (D. Me. December 6, 1999) (applying Maine law); *Richmond* v. *Shatford*, Superior Court of Massachusetts, Docket No. CA 941249 (August 8, 1995); cf. *Binns* v. *Fredendall*, 32 Ohio. St. 3d 244, 513 N.E.2d 278 (1987) (allowing unmarried cohabitant to recover for emotional distress).

Other courts have held that only blood or marriage relationships qualify as sufficient relationships, thereby barring a bystander from maintaining a cause of action for emotional distress due to witnessing the death of his fiancée. See, e.g., *Elden* v. *Sheldon*, 46 Cal. 3d 267, 758 P.2d 582, 250 Cal. Rptr. 254 (1988); *Grotts* v. *Zahner*, 115 Nev. 339, 989 P.2d 415 (1999); *Lindsey* v. *Visitec, Inc.*, 804 F. Sup. 1340 (W.D. Wash. 1992) (applying Washington law); cf. *Reynolds* v. *State Farm Mutual Automobile Ins. Co.*, 611 So. 2d 1294 (Fla. App. 1992) (interpreting "close family member" requirement under Florida law as a bar to recovery for girlfriend-fiancee of victim) review denied, 623 So. 2d 494 (Fla. 1993); see also *Ferretti* v. *Weber*, 513 So. 2d 1333 (Fla. App.) (not allowing emotional distress recovery when plaintiff's " 'live in' ladyfriend was killed"), cause dismissed, 519 So. 2d 986 (Fla. 1987).

To reach a logical and just conclusion, this court has carefully reviewed the decisions throughout the nation on this important issue.[1]

---

[1] It is noted that some of the decisions reviewed are from jurisdictions that impose identical conditions on bystander emotional distress as those imposed in Connecticut. See, e.g., *Graves* v. *Estabrook*, supra, 149 N.H. 202. Other states utilize a somewhat different standard for the relationship condition. See, e.g., *Dunphy* v. *Gregor*, supra, 136 N.J. 103 (relationship requirement that there is " 'a marital or intimate, family relationship between the plaintiff and the injured person' "). This court believes, however, that regardless of the exact relationship condition involved, the reasoning of all

There are three rationales offered to justify a strict adherence to limiting the "closely related" element to family relationships. First, some courts have articulated a desire to interpret the "closely related" element so as to advance the public policy of differentiating married couples in the eyes of the law, which encourages marriage. See, e.g., *Biercevicz* v. *Liberty Mutual Ins. Co.*, supra, 49 Conn. Sup. 180–81; *Elden* v. *Sheldon*, supra, 46 Cal. 3d 274–75. Second, there is a concern that anything other than an objective test will prove unworkable and force courts to examine personal relationships between people. See, e.g., *Biercevicz* v. *Liberty Mutual Ins. Co.*, supra, 181; *Elden* v. *Sheldon*, supra, 275–76. Third, there is a slippery slope argument. Some courts believe there is a need to limit the number of persons to whom a negligent defendant owes a duty of care to avoid extending liability to an unmanageable degree. See, e.g., *Biercevicz* v. *Liberty Mutual Ins. Co.*, supra, 183; *Elden* v. *Sheldon*, supra, 277–78.

This court is unpersuaded that these rationales justify Connecticut limiting recovery for bystander emotional distress to bystanders who are family relations of the victim. This court is of the opinion that the relationship between an engaged couple may be the basis of a claim for bystander emotional distress in Connecticut.

First, this court finds the "promotion of marriage" justification to be without merit and unrealistic. It is without merit because the engaged couple here, by definition, intended to be married. The allegations in the present case suggest that whatever other tools the state of Connecticut has to promote marriage have apparently worked with the plaintiff and victim here, as they had in fact committed themselves to be married. In addition, it is unrealistic to assume that the possibility of tort recovery is an incentive to marry. "[M]arriage will still maintain its preferential status under the law

the courts is insightful for purposes of analyzing who may maintain a claim for bystander emotional distress.

and . . . allowing recovery will not discourage marriage as a worthwhile and desirable relationship or erode society's commitment to the institution of marriage." (Internal quotation marks omitted.) *Graves* v. *Estabrook*, supra, 149 N.H. 207. This court will not deny valid tort recovery on the basis of a vague, unmerited and unsupported claim that marriage will somehow be preferred and promoted.

Next, this court recognizes that if an engaged couple may possibly be considered "closely related," then it is inevitable that litigants and courts will have to delve into the personal relationship between the bystander and the victim. This court refuses to view this as a legitimate justification for obviating the possibility of an engaged couple maintaining a claim. "The task of exploring and evaluating an interpersonal relationship when necessary to adjudicate claims arising from that relationship poses no special obstacles in the context of bystander liability." *Dunphy* v. *Gregor*, supra, 136 N.J. 111–12. The Supreme Court of New Jersey has observed that the courts of that state "have shown that the sound assessment of the quality of interpersonal relationships is not beyond a jury's ken and that the courts are capable of dealing with the realities, not simply the legalities, of relationships . . . ." Id., 111. Connecticut courts and juries likewise deal with the complexities of relationship dynamics in many instances.

In loss of consortium cases, juries are responsible for calculating damages through consideration of such factors as "the constellation of companionship, dependence, reliance, affection, sharing and aid . . . ." (Internal quotation marks omitted.) *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 372, 783 A.2d 36, cert. denied, 258 Conn. 938, 786 A.2d 426 (2001). Such considerations necessarily involve examination of the personal relationship. In cases involving the dissolution of marriage,

courts may deal with such personal issues as adultery, cruelty between spouses and sexual relationships. See, e.g., *Murphy* v. *Murphy*, 112 Conn. 417, 152 A. 397 (1930) (impossibility of sexual intercourse); *DiVito* v. *DiVito*, 77 Conn. App. 124, 822 A.2d 294 (adultery), cert. denied, 264 Conn. 921, 828 A.2d 617 (2003); *Evans* v. *Taylor*, 67 Conn. App. 108, 786 A.2d 525 (2001) (intolerable cruelty).

With successful experience in addressing personal relationships within the context of these, as well as other types of cases, there is ample reason to believe that Connecticut courts and juries are perfectly capable of considering whether an engaged couple had a sufficiently close relationship to assure that the emotional harm suffered from perceiving the serious injury or death of the other is rightly recoverable. "Furthermore, the real burden is not on the court but on the plaintiff who chooses to seek recovery for . . . emotional distress. At the outset, the plaintiff will know that the details of the relationship with the decedent will be examined and that this may involve an intrusion into the plaintiff's private life. The decision to submit to this searching inquiry is the plaintiff's choice and should not be the basis for limiting liability." *Graves* v. *Estabrook*, supra, 149 N.H. 207.

Finally, this court is unpersuaded by the concern that allowing engaged couples possibly to be considered "closely related" will lead to limitless liability by expanding the potential number of plaintiffs to whom the duty of care is owed. There is no "additional, unfair burden that would be placed on potential wrongdoers in general . . . . The identical acts of reasonable care that would have prevented the fatal accident that claimed the life of [the victim] would have preserved the emotional security of [the plaintiff]." *Dunphy* v. *Gregor*, supra, 136 N.J. 110. Considering the plaintiff as "a foreseeable and protectable person does not increase the burden of care or extend it beyond what is ordinarily

expected and appropriate . . . ." Id. In fact, "[t]o fore-close such a plaintiff from making a claim based upon emotional harm because her relationship with the injured person does not carry a particular label is to work a potential injustice, not only in this case but also in too many other instances in which the events leading to injury or death are indelibly stunning, and where the emotional injury is genuine and substantial and is based upon a relationship of significant duration that, at the time of injury, is deep, lasting and genuinely intimate." (Internal quotation marks omitted.) Id., 112.

Allowing for the possibility of a fiancee to recover for emotional distress does not open up the floodgate for litigants. The "closely related" condition remains an exacting requirement that still bars strangers, distant relatives and friends from recovering for bystander emotional distress. This court agrees with, and believes its decision remains in accord with, the Superior Court decisions in *Nadeau* v. *ADF Industries, Inc.*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-02-0282226S (July 9, 2003) (*Wiese, J.*) (granting motion to strike emotional distress claim because rela-tionship between friends "is not comparable to the parental or sibling relationship involved in *Clohessy*"), and *Polanco* v. *Kitchens*, Superior Court, judicial dis-trict of New London, Docket No. 560492 (October 4, 2002) (*Hon. D. Michael Hurley*, judge trial referee) (granting motion to strike emotional distress claim because cousin relationship, as alleged, not legally suf-ficient).

Rejecting a bright line rule that bars engaged couples from recovery "does not place an intolerable burden upon society or unfair burden upon a negligent defen-dant. Rather, it allows recovery for an eminently fore-seeable class of plaintiffs. This class of plaintiffs is further narrowed by the other elements of the bystander cause of action, such as contemporaneous observation, death or serious injury to the victim, and severe emo-

tional injury to the plaintiff, [that] structure the kind of particularized foreseeabilty that ensures that the class of plaintiffs is reduced even further and that limitless liability is avoided." (Internal quotation marks omitted.) *Graves* v. *Estabrook,* supra, 149 N.H. 208.

This court agrees that the analysis of whether an engaged couple is "closely related" hinges not on whether they have obtained a marriage license from the state, but whether they have a close relationship that "is stable, enduring, substantial, and mutually supportive . . . cemented by strong emotional bonds and provid[ing] a deep and pervasive emotional security." (Internal quotation marks omitted.) Id., 209. The inquiry should "take into account the duration of the relationship, the degree of mutual dependence, the extent of common contributions to a life together, the extent and quality of shared experience, and . . . whether the plaintiff and the injured person were members of the same household, their emotional reliance on each other, the particulars of their day to day relationship, and the manner in which they related to each other in attending to life's mundane requirements." (Internal quotation marks omitted.) Id., 209–10.

### III

### CONCLUSION

This court holds that an engaged couple may have a relationship that is considered "closely related" for purposes of a bystander emotional distress claim. In the present case, the plaintiff has alleged that he had donated an organ to the victim. To do so he subjected himself to surgery and all of the risks and anxiety attendant thereto. They were engaged to be married. It is reasonable to conclude that inferences from the facts alleged in the amended complaint may support a finding that the plaintiff was "closely related" to the victim.[2]

[2] This court emphasizes that it is not implying that the mere allegation and proof of the status of a relationship is sufficient by itself to prove that the bystander and the victim were "closely related." Although the allegation

For the foregoing reasons, the defendants' motion to strike is denied.

of being the victim's fiancee is sufficient to withstand a motion to strike because of the presumptions such a motion requires, proof of being "closely related" will require proof of the close relationship. Hypotheticals of couples who wed when they first met one week ago, parents and children who have not spoken in many years, and estranged siblings, all illustrate that there is no relationship, including a relationship of an engaged couple, that is "closely related" simply by its label. "A defendant should always have the right, even in the case of a parent and child or a husband and wife, to test the operative facts upon which the claim is based irrespective of the de jure relationship." (Internal quotation marks omitted.) *Dunphy* v. *Gregor*, supra, 136 N.J. 112. Such will be the defendants' right in the present case.