Strafford
No. 83-288

CLYDE A. NUTTER, ADMINISTRATOR OF THE ESTATE OF
AMANDA M. NUTTER
CLYDE A. NUTTER and GAIL NUTTER

v.

FRISBIE MEMORIAL HOSPITAL *& a.*

April 16, 1984

792

*Stephen R. Fine & Associates P.A.*, of Manchester (*Charles A. Meade* on the brief, and *Stephen R. Fine* orally), for the plaintiffs.

*Sulloway, Hollis & Soden*, of Concord (*Robert M. Larsen & a.* on the brief, and *Mr. Larsen* orally), for the defendants.

BROCK, J. Amanda M. Nutter, aged three months, died on March 31, 1980, allegedly as a result of malpractice by the defendant doctors, who are employed by the defendant Frisbie Memorial Hospital. Counts I and II of the complaint in this case set forth claims for wrongful death brought by the administrator of Amanda's estate. Count III is a separate action brought by Amanda's parents, seeking recovery for their "severe mental and emotional harm and distress, accompanied by physical symptoms" which allegedly resulted from the harm inflicted on their daughter by the defendants' malpractice.

By agreement of the parties, and pursuant to RSA 491:17, the Superior Court (*Goode*, J.) transferred without ruling the following question of law: "Do the parents of Amanda Nutter have a cause of action under Count III of the writ which would permit them to recover damages for their emotional distress allegedly resulting from defendants' medical malpractice?" For the reasons which follow, we answer this question in the negative.

The facts, as stipulated by all parties, are briefly stated. Amanda was born on December 28, 1979. On March 28, 1980, she became ill with symptoms of vomiting and coughing, and was seen by the defendant Dr. DeJohn, her regular pediatrician. Dr. DeJohn examined Amanda in his office, ordered chest X-rays, and eventually diagnosed pneumonia.

Amanda was allowed to return home. On March 31, 1980, she developed complications while in the care of a babysitter and was transported to the hospital by ambulance. She arrived there at 2:50 p.m. and died less than half an hour later, at 3:18 p.m. Her parents, who had been called by the babysitter and had reached the hospital shortly after the ambulance, were immediately advised of Amanda's death and were taken into the emergency room to view her body.

Because we are asked to rule, in essence, on a motion to dismiss, "the plaintiff's allegations of fact and the reasonable inferences therefrom are assumed to be true and are construed most favorably to the plaintiff. . . . If the facts as alleged would constitute

a basis for legal relief, the motion to dismiss should be denied." *Royer Foundry & Mach. Co. v. N.H. Grey Iron, Inc.*, 118 N.H. 649, 651, 392 A.2d 145, 146 (1978) (citations omitted). Accordingly, our discussion assumes that the plaintiffs will prove that the defendants' negligence caused their daughter's death, and thereby produced the emotional harm and physical symptoms alleged in Count III.

■ The plaintiffs concede that, to find a cause of action in this case, we must expand the boundary of liability for negligent infliction of emotional harm that we set out in *Corso v. Merrill*, 119 N.H. 647, 657–59, 406 A.2d 300, 306–08 (1979). In that case, we refused to bar recovery "for the serious emotional injury to parents who contemporaneously perceive or witness a serious injury to their child that is caused by defendant's negligence," *id.* at 658, 406 A.2d at 307, even when that negligence did not place the parents themselves in fear of their own safety.

In *Corso* we applied traditional negligence principles of foreseeability and causation, but we also recognized the necessity of adopting well-defined guidelines that would prevent the imposition of "remote and unexpected liability" on defendants in such bystander cases. *Id.* at 656, 406 A.2d at 306 (citing *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968), and subsequent California cases).

■ This necessity arises because the liability of a negligent defendant to a bystander parent is largely derivative i.e., based on the emotional ties between the parent and the injured child. The New York Court of Appeals, in refusing to permit recovery by bystanders outside the "zone of danger," summarized the problem thus:

> "Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. The risks of indirect harm from the loss or injury of loved ones is [sic] pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed."

*Tobin v. Grossman*, 24 N.Y.2d 609, 619, 249 N.E.2d 419, 424, 301 N.Y.S.2d 554, 561–62 (1969).

■ We rejected the zone-of-danger rule in *Corso* for several reasons, including the fact that its basis, the plaintiff's fear for his or

her own safety, bore no direct relationship to the injury being compensated—the plaintiff's emotional reaction to an injury suffered by someone else. *See Corso v. Merrill, supra* at 656, 406 A.2d at 306 (citing *Dziokonski v. Babineau,* 380 N.E.2d 1295, 1300 (Mass. 1978)). At the same time, we recognized the need for a clearly-defined boundary to liability in this area, where both foreseeability and causation become attenuated very gradually as the harm to the plaintiff becomes further and further removed from the defendant's negligent act.

The fact that such a boundary is difficult to draw does not obviate the reasons for drawing it.

> "It is still inconceivable that any defendant should be held liable to infinity for all of the consequences which flow from his act, and some boundary must be set. If nothing more than 'common sense' or a 'rough sense of justice' is to be relied on, the law becomes to that extent unpredictable, and at the mercy of whatever the court, or even the jury, may decide to do with it."

W. PROSSER, LAW OF TORTS § 43, at 263 (4th ed. 1971) (quoting *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 352 and 354, 162 N.E. 99, 103 and 104 (1928) (Andrews, J., dissenting)).

It is these policy considerations—the need to avoid both infinite liability and uncertainty in the law—that we must weigh against the need to compensate those plaintiffs whose injuries derive, however remotely, from the defendant's negligence. We applied this same type of balancing test in *Libbey v. Hampton Water Works Co.,* 118 N.H. 500, 502–03, 389 A.2d 434, 435–36 (1978) (no liability for failure of a water company to provide sufficient pressure for fire fighting), and in *McLaughlin v. Sullivan,* 123 N.H. 335, 341–42, 461 A.2d 123, 127–28 (1983) (no liability for a suicide allegedly resulting from defendant's legal malpractice), as well as in *Corso* itself.

The boundary we drew in *Corso* was designed to achieve the policy goals set out above, by clearly limiting bystander recovery to those plaintiffs whose injuries were most directly and foreseeably caused by the defendant's negligence. We permitted recovery for emotional distress following an accident in which the harm resulted from "a direct emotional impact upon the plaintiffs through their sensory perception . . . contemporaneous with the accident. . . ." *Corso v. Merrill,* 119 N.H. at 657, 406 A.2d at 307. This meant that the parent had to be close enough to experience the accident at first hand, and that "recovery will be denied if the plaintiff either sees

the accident victim at a later time, or if the plaintiff is later told of the seriousness of the accident." *Id.*

As the *Tobin* court and some commentators have pointed out, pain at the death, illness or injury of a loved one is an emotional cost borne by everyone living in society. *Tobin v. Grossman*, 24 N.Y.2d at 619, 249 N.E.2d at 424, 301 N.Y.S.2d at 561–62. Comment, *Dillon Revisited: Toward a Better Paradigm for Bystander Cases*, 43 OHIO ST. L.J. 931, 945–46 (1982) (citing RESTATEMENT (SECOND) OF TORTS § 46 comment *j* (1965)). "The law intervenes only when the plaintiff bears an unusual or aggravated burden." *Id.* at 946 (citing *Justus v. Atchison*, 19 Cal. 3d 564, 565 P.2d 122, 139 Cal. Rptr. 97 (1977)).

A rule that permitted recovery by the plaintiffs in this case would create a potential cause of action in every parent who learned, by any reasonable means, of his or her child's negligently inflicted death or injury, and as a result suffered emotional injury manifested by physical symptoms. Even if no further expansion of the rule occurred, this could impose more liability than any defendant could reasonably foresee, and more than any court has yet recognized. We decline to adopt any such rule.

We answer the transferred question in the negative. The case is remanded to the superior court with instructions to dismiss Count III.

*Remanded.*

All concurred.