[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
In this case, the defendants, Yale-New Haven Hospital and Dr. Levine, have filed a motion to strike against the third and sixth counts of the complaint. Those counts make a bystander emotional distress claim against the doctor and the hospital respectively.
The defendants advance two arguments. First, it is argued that, despite the fact Clohessy v. Bachelor, 237 Conn. 31, 52 (1996), recognized a cause of action for bystander emotional distress if certain criteria are complied with, it is still not permissible to permit such an action where it is a result of medical malpractice. Furthermore the defendants maintain that even if such an action were to be allowed, the allegations of this complaint do not satisfy one of the four Clohessy requirements which are a predicate for such a claim.
The rules to be applied in deciding a motion to strike are well known. The pleading of the nonmoving party subject to challenge, here, the complaint, must be given that reading which is most favorable. First, the court will discuss the argument that an action for bystander emotional distress as a result of medical malpractice is not permitted. Then the court will try to decide whether, even if such an action is allowed under Clohessy, the CT Page 1162 allegations of this complaint comply with the four conditions established by Clohessy as a limitation on a strict foreseeability test under that doctrine.
 I.
Is an action for bystander emotional distress as a result of medical malpractice viable under Clohessy? An easy answer is to say why not; nothing in the language of Clohessy prohibits such a claim and as long as the tests established by Clohessy are met why should a further limitation on this tort be recognized? The problem with this view is the explicit language of Maloney v.Conroy, 208 Conn. 392 (1988), which also involved a claim of bystander emotional distress arising out of an allegation of medical malpractice. The Maloney court was well aware of California law which first recognized the tort in Dillon v. Leg.,441 P.2d 912 (1968), and the later California case of Ochoa v.Superior Court, 703 P.2d 1 (1985), which modified Dillon, or at least one requirement of Dillon. It is necessary to discuss California law after Dillon to put Maloney and Clohessy in context.
In Dillon, the Ochoa court said, "the touchstone of our analysis . . . was foreseeability" and went on to note thatDillon provided "guidelines" to see whether a cause of action was stated for bystander emotional distress. The Dillon guidelines were
 "(1) Whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.
 (2) Whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence.
 (3) Whether the plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship."
See Ochoa at 701 P.2d, page 5.
In Ochoa, the plaintiff's son was placed in a juvenile detention infirmary on March 25. The child appeared to be very CT Page 1163 ill and in great pain. Over the course of that day the mother witnessed the apparent neglect of her child's medical needs. The case was quite flagrant. The child died in the early morning of March 26, id. pp. 3-4. At page 6 of its opinion, the Ochoa court said, "The primary issue before us is whether, in order to state a cause of action under Dillon, the child's injury must have been the result of a brief and sudden occurrence viewed contemporaneously by the plaintiff." Unless this perceived requirement of Dillon was relaxed, it is apparent that very few bystander emotional distress cases could be brought in the medical malpractice area. As observed by the Clohessy court in another context in the medical malpractice situation, "there generally is no significant observable traumatic event" that causes injury. The Ochoa court held that "the `sudden occurrence' requirement is an unwarranted restriction on the Dillon
guidelines," id. page 7, and went on to hold, "that when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child recovery is permitted," id. page 8.
It is against this background, and being aware of California law, that the court's language in Maloney becomes significant to the issue now before the court. There at 208 Conn., page 402, the court said:
 "The subsequent modification in Ochoa that `a sudden and brief event' was not necessary to satisfy the Dillon requirement of "sensory and contemporaneous observance of the accident, allowing those like this plaintiff to bring actions for emotional disturbance based upon their observation of the course of treatment of an alleged malpractice victim over an extended period of time, demonstrates to us that the ineffectiveness of those guidelines in screening out claims of any family member for the grief . . . suffered from the loss of a loved one. Whatever may be the situation in other contexts, where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person we should return to the position we articulated in Strazza, that there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another."[1]
As Judge Hurley points out in his recent opinion in Drew v. TheWilliam Backus Hospital, 5 Conn. Ops. 1319 (1999), some courts hold Maloney was overruled by Clohessy or that Maloney is limited CT Page 1164 to its factual circumstances and if the four Clohessy factors are met a bystander emotional disturbance claim is allowed in a medical malpractice context. Other courts hold that sinceClohessy did not explicitly overrule Maloney such claims are not allowed. See Judge Hurley's opinion at page 1320 for a listing of the cases.
It is possible to try to distinguish Maloney on its facts and say as the court did in Drew that even under Clohessy the Maloney
plaintiff did not state a valid claim. The Maloney trial court found according to this view that the plaintiff did not allege she suffered an injury contemporaneously with her perception of the alleged medical malpractice, see 5 Conn. Ops. at page 1321. Thus, the facts in the Maloney complaint only stated the defendants knew or should have known their conduct was likely to cause the emotional distress "that the plaintiff ultimately did suffer as a result of their negligent treatment of her mother," 208 Conn. at page 394 (emphasis added by this court). But that view presents some problems because in Maloney the plaintiff daughter was at the mother's bedside while her health deteriorated because the doctors allegedly failed to care for her, a circumstance not unlike that in Ochoa.
In any event even if Maloney can be factually distinguished and the plaintiff in that case would not be allowed to bring under bystander action under Clohessy that does not explain away the broad language in Maloney explicitly rejecting Ochoa and the notion that this tort could be brought when the claimed injury arises out of medical malpractice.
The best way to approach the question as to whether Maloney's strictures are still viable after Clohessy is to examine the language of Clohessy and cases from other jurisdictions which have adopted Dillon v. Legg and/or Ochoa and have discussed whether it should be applied in the medical malpractice area.
First as to Clohessy, that case recognized the bystander tort; it adopted what it described as the "reasonable foreseeability rule subject to certain conditions. The first condition was that (1) the bystander must be closely related to the injury victim (citing Thing v. LaChusa; (2) the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct causing the injury (citing Thing v. LaChusa
again along with other cases). In this second requirement our court went beyond Thing v. LaChusa, perhaps mindful of the CT Page 1165 dissent in that case, see 771 P.2d, pp. 839 et seq. and added the second requirement could be met "by viewing the victim immediately after the injury causing event if no material change has occurred with respect to the victim's location and condition," 237 Conn. at p. 52; (3) the injury to the victim must be substantial; (4) the bystander must have sustained a serious emotional injury citing Thing v. LaChusa again.
It would be an odd turn of events if after Clohessy, Maloney
was read to still preclude a bystander action which resulted from medical malpractice. This seems apparent when the second prong of the Clohessy test is examined. That test is directly derived fromThing v. LaChusa and our court used even more explicit language than the California court to reject the Dillon limitation which in its second prong restrictively required that the injury must be of a sudden and brief occurrence contemporaneously observed. Our court said as to the second prong that the bystander's injury must be caused by the contemporaneous sensory perception of the event or conduct that caused the injury. (Emphasis added.) Thing
explicitly rejected the brief and sudden occurrence limitation, our court adopted Thing's position on that point. In expanding the second prong of the California test, Thing relied on Ochoa
which was a medical malpractice case. As Maloney recognized, the expansion of the test in Ochoa as adopted in Thing, is more amenable to permitting bystander emotional disturbance claims in the medical malpractice area, witness Ochoa. Situations a laDillon where a family member were to observe a sudden and brief occurrence of malpractice leading to contemporaneous injury are very rare indeed. Ochoa permitted and Thing recognized bystander claims could be made where there was an observed course of conduct over a period of time causing injury to the family member. Given this history and analysis, the explanatory burden shifts to the position that says under Clohessy bystander claims are not allowed as a result of medical malpractice. But nothing in Clohessy's reasoning requires such a result.
The court has tried to find cases dealing with bystander emotional distress as a result of medical malpractice in jurisdictions recognizing the tort and especially those relying on California case law and its concern with foreseeability of injury. There are not many such cases because either under the conditions in Dillon or their expansion in Thing v. LaChusa, the limitations placed on the tort preclude the possibility that there will be many cases involving this tort in the medical malpractice area. It is interesting to note that even courts that CT Page 1166 relied on Dillon before Thing was decided or who follow Dillon
but do not allude to Thing do not automatically or, by definition, refuse to apply that doctrine to bystander actions resulting from medical malpractice.
In Gulick v. Shu, M.D., 618 F. Sup. 481 (D.C. Pa. 1985) the district court granted a motion to dismiss in a diversity case applying Pennsylvania law. In that case, there was a claim of medical malpractice against a doctor who delivered the plaintiff's child. The court dismissed the father's claim because he did not allege in his complaint that "he directly observed the defendant physician's conduct causing the injury." The court recognized that Pennsylvania followed Dillon v. Legg, supra, and listed the three previously mentioned criteria under that case that had to be met if a bystander emotional disturbance claim was to be brought. The court did not base its decision to dismiss the father's claim on the fact that it arose as a result of a medical malpractice allegation. It decided the claim should be dismissed because the father was not present at the scene of the injury, i.e. the doctor's actual malpractice.
Thus, the second Dillon prong was not met requiring emotional impact "from the sensory and contemporaneous observance of the accident," id. p. 483. But the Gulick court made a point of saying that, despite its ruling against the plaintiff on the just mentioned grounds, it agreed with the plaintiff that there was" no reason for limiting Sinn to its factual setting . . . ", id. p. 483. (Sinn v. Burd, 404 A.2d 672 (1979), the leading Pennsylvania case, adopted the Dillon v. Legg test and involved a terrible situation where the plaintiff mother sued after seeing her child struck by an automobile.) In Love v. Cramer,606 A.2d 1175 (Pa.Super., 1992) the court reversed the trial court's dismissal of a plaintiff daughter's complaint alleging that she took her mother to see the defendant doctor and in her presence the doctor failed to conduct the necessary tests to see if she had a heart problem. The mother died later in the daughter's presence.
The case applied Sinn v. Burd, supra, and the Dillon test. Although it perhaps went too far in ruling the second prong of that test was met, it certainly had no trouble in concluding, that where the Dillon test was otherwise met, a bystander claim can be brought under Pennsylvania law in the medical malpractice context, cf. Bloom v. Dubois Regional Medical Center,597 A.2d 671, 683 et seq (Pa., 1991). CT Page 1167
In Nutter v. Frisbee Memorial Hospital, 474 A.2d 584 (NH, 1984), the court applied its own version of the Dillon test which it adopted in Corso v. Merrill, 406 A.2d 300 (1979). It held that the parents of a child who died as a result of the alleged malpractice of the defendant doctor could not bring a bystander action because their emotional distress did not result from the parents' sensory perception contemporaneous with the "accident;" the "accident" had to be experienced firsthand. In Nutter, the child was examined but not admitted into the hospital. Three days later, the parents left her with a babysitter. She developed complications and was rushed to the hospital where she died; the parents were contacted and went to the hospital where they viewed the child's body. The court does not base its decision in dismissing the claim on the fact that it arose in the medical malpractice context. It held that a bystander claim cannot be allowed for every parent who, though not present, learned of its child's negligently inflicted death.
In Wilson v. Galt, 668 P.2d 1104 (N.M.App., 1983), the plaintiff brought suit against physicians, lab technicians and a hospital for allegedly negligent care and treatment of their child. The court noted at page 1110 that: "The detailed complaint indicates no observance by either parent of a sudden trauma involving (the child). The allegations suggest a gradual occurrence of harm and awareness by the parents of the deterioration not the cause." (Cause was apparently misdiagnosis or failure to diagnose.) The court makes the broad statement that California does not extend the bystander tort to the medical malpractice field but then states this is so because an essential element of such claims is that the plaintiff contemporaneously witness the incident and some immediate resulting harm. But that is only a factual predicate difficult to find in a medical malpractice case under the Dillon guidelines. It is certainly not a supportable reason to deny the tort in a factual context where this requirement is met under Dillon and the claim arises out of medical malpractice.
A Texas and a New Jersey case are, at least to the court, particularly instructive. In Edinburg Hospital Authority v.Trevino, et al, 904 S.W.2d 831 (Tex. Ct. of App., 1995), the court noted its Supreme Court adopted the Dillon analysis in Freeman v.City of Pasadena, 744 S.W.2d 923 (Tex., 1988). The court recognized the father's right to bring a bystander claim against the hospital where he observed the allegedly negligent treatment CT Page 1168 of his wife by doctors, their delay in taking her to surgery, and saw his dead child in his wife's arms immediately after the cesarian section that was performed, id. p. 837. The court instructively noted at page 836:
 "A claim of a bystander in medical malpractice is unusual. The typical bystander action arises from an automobile collision or other tort in which the injuries are immediate and apparent. Most attempts by a plaintiff to qualify as a bystander in a medical malpractice context have been unsuccessful, primarily because there has been no sudden accident in which the results are immediately obvious.
All of this is a reason why under Dillon, bystander claims in the medical malpractice area would not be numerous. But even under Dillon, in the appropriate case where the conduct is observable and the negative results immediately obvious, the tort has been held to be viable even in the medical malpractice area. Thus, the Trevino court found the particular facts of the case met the Dillon standard and allowed the plaintiff father to make the bystander claim.
In Frame v. Kothari, M.D., 560 A.2d 675 (N.J., 1989), the court denied the parents' bystander claim made under Porter v. Jaffee,417 A.2d 521 (N.J., 1980), which relied on Dillon's reasoning.Porter, in turn, was heavily relied on by our court in Clohessy
in reaching the result that it did. See 237 Conn. at p. 44, 46-47, 52, 54. Frame involved a situation where the plaintiff parents claimed the doctor misdiagnosed their son's condition but the bystander claim was dismissed because the diagnosis did not manifest itself in an immediate injury; only four hours later did the parents observe their son in a moribund condition, eleven more hours elapsed before they learned through a phone call from the hospital that their son had died. The circumstances, though tragic, were not shocking. It was similar to parents witnessing a child's suffering without awareness that medical misdiagnosis was contributing to the suffering, id. p. 681. Along the way, the court made interesting observations. It reviewed a series of misdiagnosis cases from other jurisdictions. Amodio v.Cunningham, 180 Conn. 80 (Conn., 1980), even made a cameo appearance. But then at pp. 680-681, the court said:
 "Although variously expressed, the common thread running through these cases is that a misdiagnosis normally does not create the kind of horrifying scene that is a prerequisite to CT Page 1169 recovery. Rarely will a member of the patient's family contemporaneously observe the immediate consequences of the defendant's misdiagnosis and even more rarely will the results of the misdiagnosis be the injury or death of a loved one contemplated by the gruesome scene portrayed in Porter." (Child crushed in elevator before mother.)
This observation is true of most medical malpractice situations not just those involving misdiagnosis. Family members are not allowed to observe surgical procedures or even many types of testing. Thus, the limitations on visitation feared by Maloney, if bystander actions were allowed against hospitals, is not a real world concern.
The Frame court then went on to say:
 "In an appropriate case, if a family member witnesses the physician's malpractice, observes the effect of the malpractice on the patient, and immediately connects the malpractice with the injury, that may be sufficient to allow recovery for the family member's emotional distress. Such an event could be shocking." 560 A.2d at p. 681.
Based on the foregoing discussion, this court concludes that in an "appropriate" case, an action for bystander emotional disturbance as a result of medical malpractice would be permitted in our state after Clohessy and "appropriateness" is determined by application of the four conditions set out in Clohessy to determine whether the action is to be permitted, 237 Conn. at pp. 51, et seq. There is no common sense reason why our court, having adopted the Dillon/Thing analysis, would apply it in a more restrictive manner than the several other jurisdictions just discussed, which would of course include California. See Ochoa.
 II.
The next issue to be addressed is whether the claim made here, giving the complaint its most favorable reading is "appropriate," that is, does it meet the four conditions set forth in Clohessy
and referred to previously.
As noted, Clohessy recognized the bystander tort by adopting a reasonable foreseeability standard subject to four conditions. The question presented by this motion is whether the second condition is met by the allegations of this complaint. At 237 CT Page 1170 Conn., page 52, the Clohessy court says:
 "Second, the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct that causes the injury . . . or by viewing the victim immediately after the injury causing event if no material change has occurred with respect to the victim's location and condition."
Here, the relevant portion of the complaint states the plaintiff decedent underwent cardiac surgery on March 22, 1998 (para. 6); the day following surgery and throughout his hospitalization the decedent was paranoid, disorientated and delusional. During the nine-day post-surgery hospitalization he became more severely mentally ill, and these just mentioned mental states resulted in his being totally detached from reality. (Paras. 7, 8.) On March 29, 1998, as a result of the family's insistence that he needed treatment for his mental condition, the decedent was seen by a hospital psychiatrist who prescribed a low dosage of an antipsychotic medication, Haldol. (Para. 9.)
On March 31, the day before his discharge, the psychiatrist noted the decedent was having recurrent bouts of paranoia and confusion as recently as the night of March 30 and was still delirious but only recommended he continue Haldol. (Para. 10.) The decedent was discharged April 1, 1998, at 9:30 a.m. with no prescription for Haldol and scheduled psychiatric exam or after care plan even though he continued to be paranoid and delusional and needed immediate and continuous psychiatric care, including hospitalization. (Para. 11.) The decedent's mental condition continued to worsen after his discharge from the hospital until he finally committed suicide at 1 a.m. on April 4, 1998, in the presence of the plaintiff wife. (Para. 12.)
The motion to strike does not raise the issue of compliance with the first, third or fourth condition of Clohessy. The second condition just quoted and whether this complaint satisfies it must now be discussed.
The Clohessy second condition talks about "the contemporary sensory perception of the event or conduct that causes the "injury." Thing v. LaChusa used the word "conduct" to accommodate the holding in Ochoa, that is, Ochoa held that the injury need not be the result of a brief and sudden occurrence, such as an accident, viewed contemporaneously by a plaintiff family member, CT Page 1171 703 P.2d, page 6. Ochoa at page 8 held recovery is permitted "when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child." It is important to note, as the discussion in Ochoa makes clear, that the "injury" Mrs. Ochoa was claiming was not the death of her son but the actual lack of treatment which occurred in her presence; the neglect of medical treatment while she was present caused her extreme mental and emotional distress. As Thing observed in commenting on Ochoa at 771 P.2d, page 825: "Thus, the plaintiff in that case (Ochoa) did not have to know that the defendants had negligently misdiagnosed her son. It was enough that she knew that they were refusing or neglecting to give him additional treatment and this was the cause of the additional injury he was suffering." In Ochoa itself, the son died at some point after the mother left him at the center.
In Trahan v. McManus, 653 So.2d 89 (La.App., 1995), the plaintiff did not witness the automobile accident her son was involved in. She went to the hospital after the accident and witnessed his negligent discharge. He died a few hours later at home in the presence of both parents. But her severe anguish on which her claim was based was caused by witnessing her son's discharge from the hospital. This was the event that caused injury to her son. Thus, under Louisiana law, that condition for a bystander action was met.
There must be a contemporaneous observance of the actions causing injury and an awareness that that is the case. In a misdiagnosis or failure to treat case, a resulting severe condition or death observed by the family member without contemporaneous observance of the actual misdiagnosis or failure to treat cannot satisfy Clohessy's second condition. Any other rule would, in effect, "create a potential cause of action on every parent who learned, by any reasonable means, of his or her child's negligently inflicted death or injury, and as a result suffered emotional injury manifested by physical symptoms."Nutter v. Frisbee Memorial Hospital, 474 A.2d 584, 585, 587
(N.H., 1984), cf. Budvari v. Barry, 222 Cal.Rptr. 446 (1986);Gulick v. Shu, M.D., 618 F. Sup. 481, 482 (D.C. Pa., 1985);Wilson v. Galt, 668 P.2d 1104 (N.M., 1983); Frame v. Kothari, M.D., 560 A.2d 675, 681 (NJ, 1989).
The problem with the allegations of this complaint is that there is no allegation that anything other than the actual CT Page 1172 suicide caused the severe emotional distress. There is no claim that the treatment or lack of treatment at the hospital or that the decedent's discharge caused the plaintiff any distress and there is no explicit claim that the plaintiff was even aware that the allegations she makes regarding the hospital's actions or failures to act were causing the decedent harm, cf. Wright v.City of Los Angeles, 268 Cal.Rptr. 309 (1990), or that these actions, as such, even caused him harm and that she was aware that the harm was being inflicted thereby. The only hint of a viable claim is the inference that the decedent's condition deteriorated mentally from the date of his March 22nd operation and he was seen on March 29th upon the insistence of the family. But again, there is no claim that this failure to act caused the plaintiff extreme anguish or that the insistence occurred on any other date than March 29th. The decedent was seen on that very date. More to the point, Ms. Davis is making the bystander claim, not her "family" as such, so it is not clear whether she was part of the "family" referred to in para. 9 that was insisting the decedent get treatment for his mental condition. If the allegations of this complaint are compared to those made by the mother in Ochoa, it is apparent that the second Clohessy
condition is not met and that the requirements for a bystander action as a result of medical malpractice have not been addressed by the complaint as required by the conditions set forth inClohessy.
The motion to strike is granted on this ground only.
Corradino, J.