NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2021-0166

MARC CHARTIER, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF LISA CHARTIER

v.

APPLE THERAPY OF LONDONDERRY, LLC & a.

Argued: March 15, 2022
Opinion Issued: February 10, 2023

Abramson, Brown & Dugan, of Manchester (Jared R. Green on the brief and orally), for the plaintiff.

Wadleigh, Starr & Peters, PLLC, of Manchester (Todd Hathaway and Gretchen W. Wade on the joint brief, and Todd Hathaway orally), for defendant Apple Therapy of Londonderry, LLC.

Morrison Mahoney, LLP, of Boston, Massachusetts (Tory Weigand and Justin R. Veiga on the joint brief), for defendants Heather C. Killie, M.D. and

Four Seasons Orthopaedic Center, PLLC d/b/a New Hampshire Orthopaedic Center.

MACDONALD, C.J. In Corso v. Merrill, 119 N.H. 647 (1979), we held that a plaintiff need not be in the zone of danger to recover for negligent infliction of emotional distress. Instead, we announced a new rule intended to compensate plaintiffs who were not in the zone of danger but nevertheless suffered emotional distress as a result of a defendant's negligence. In this case, we apply the Corso standard to allegations involving medical professionals' negligent misdiagnosis, which resulted in the death of Lisa Chartier. Lisa's husband, Marc Chartier, brought this action against the defendants, Apple Therapy of Londonderry, LLC (Apple Therapy), Four Seasons Orthopaedic Center, PLLC d/b/a New Hampshire Orthopaedic Center (Four Seasons Orthopaedic), and Dr. Heather C. Killie. He appeals an order of the Superior Court (Temple, J.) granting the defendants' motion for partial summary judgment with respect to his negligent infliction of emotional distress claim. We vacate and remand.

I. Background

A. Facts

The following facts were undisputed for purposes of the motion for partial summary judgment. We recognize that, on remand, many of these facts will be disputed.

On January 5, 2018, Dr. Killie performed surgery on Lisa's left knee. On that same day, Lisa went home in a long leg brace. Due to several health factors, Lisa had an elevated risk of developing deep vein thrombosis (DVT) following surgery. DVT is the "formation of . . . blood clots or plaques adhering to [the] inner surface of [a] blood vessel . . . in the deep veins of the lower limbs." 2 J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder D-31 (2007). Within the next two days, Lisa developed calf soreness in her left leg. Calf soreness is a sign of DVT.

Over the next several days, Lisa attended follow-up appointments with her care team. On January 12, Lisa began physical therapy at Apple Therapy. She reported symptoms of DVT at this visit, but nothing was done to detect DVT. On January 15, Lisa went to her first postoperative visit with Dr. Killie. At that appointment, Lisa informed Dr. Killie about her calf soreness. Dr. Killie told Lisa that the soreness "was a normal effect of the surgery," and said "to keep doing what she was doing." On January 17, Lisa went to her second physical therapy appointment at Apple Therapy. She reported to her physical

therapist that she was still experiencing calf soreness.  Nothing was done to determine if Lisa had DVT.  After the appointment, Marc drove Lisa home and went to work.

Around 7:00 p.m. on January 17, Marc and Lisa left home to go to a brewery.  After making her way to the car using crutches, Lisa expressed that she was "a little bit out of breath."  Nevertheless, she recovered her breath quickly as they drove to their destination.  Around 9:30 p.m., when Marc and Lisa left the brewery, Lisa felt "fantastic."  However, during the drive home, her condition quickly deteriorated.  Lisa told Marc that she felt hot, and she began making terrible noises associated with her breathing before passing out twice in the passenger seat of the car.  Marc drove to a nearby urgent care facility, but it was closed.  He then called 911.  Paramedics and firefighters arrived and took Lisa to the hospital.  Marc followed the ambulance in his car.

At the hospital, care providers performed chest compressions on Lisa. Marc stood in the threshold of the room where care providers attempted to resuscitate her.  The care providers observed Lisa's knee brace, and one of them asked Marc if she had undergone knee surgery.  When Marc answered "yes," the care provider said, "It's a clot.  I'm sorry, it's a clot."  The care providers were unsuccessful in their efforts to save Lisa's life, and she passed away at 11:15 p.m.  Following Lisa's death, the medical examiner determined that she died from "cardiovascular collapse due to pulmonary thromboembolism due to [DVT] due to immobilization following [the] recent surgical repair of [her] torn meniscus."

### B. Procedural History

Marc filed this action in superior court.  In his capacity as the administrator of Lisa's estate, he alleged: (1) medical negligence against Apple Therapy; (2) medical negligence against Dr. Killie; and (3) vicarious liability for Dr. Killie's negligence against Four Seasons Orthopaedic.  In his personal capacity, he alleged against all defendants: (1) loss of consortium; and (2) negligent infliction of emotional distress.  The defendants moved for partial summary judgment with respect to Marc's negligent infliction of emotional distress claim.  Following a hearing, the trial court granted the defendants' motion concluding that, as a matter of law, "the time between the negligent act and [Marc's] injury is simply too attenuated to recover for [negligent infliction of emotional distress]."  Marc's motion for reconsideration was denied.

Subsequently, Marc sought to appeal the decision on an interlocutory basis.  He filed a motion requesting the trial court's signature on a proposed interlocutory appeal statement to which the defendants objected.  The trial court held a hearing, at which the court sua sponte raised whether it should classify the order granting the defendants' motion for partial summary judgment as a "final decision on the merits" pursuant to Superior Court Rule

46(c). After considering the parties' written submissions, the court ruled that its "[o]rder granting the defendants' motion for summary judgment and, to the extent necessary, its . . . order denying [Marc's] motion to reconsider, shall be treated as final decisions on the merits pursuant to [Superior Court] Rule 46(c)." This appeal followed.

Before accepting this appeal, we sua sponte ordered the parties to file brief memoranda "addressing whether the trial court erred when it directed that the order granting the defendants' motion for partial summary judgment should be treated as a final and appealable decision on the merits." See Super. Ct. R. 46(c)(2)(B). We deferred ruling on this question, accepted the appeal, and held oral arguments on the merits.

II. Analysis

At the outset, we briefly address the procedural issue under Superior Court Rule 46(c). As discussed below, one element of negligent infliction of emotional distress requires the plaintiff to show that the defendant negligently injured a third party. Thus, the issue of the defendants' negligence in this case is common to both the plaintiff's claim brought on appeal and the underlying malpractice claims still pending in the superior court. Ordinarily, the principle of avoiding piecemeal appellate review would preclude acceptance of an appeal of a severed case with such overlapping issues. See Spiegel v. Trustees of Tufts College, 843 F.2d 38, 44-45 (1st Cir. 1988); cf. Germain v. Germain, 137 N.H. 82, 84 (1993) ("[W]e do not intend to encourage bifurcation, and caution that discretion to bifurcate should be exercised sparingly.").

Nevertheless, we conclude that, under the circumstances of this case, appellate review is appropriate at this time. The issue raised in this appeal is wholly unrelated to the issue of negligence that is common to the other claims of Marc and the estate. Indeed, this case involves purely legal questions pertaining to other elements of Marc's negligent infliction of emotional distress claim. For these reasons, we proceed to the merits. See Super. Ct. R. 46(c)(2)(B).

In reviewing a trial court's grant of summary judgment, we consider the parties' affidavits, other evidence, and all inferences properly drawn from them in the light most favorable to the nonmoving party. St. Onge v. MacDonald, 154 N.H. 768, 770 (2007). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. Id. We review the trial court's application of the law to the facts de novo. Id.

In Corso, we were asked to determine whether "parents who perceive through their senses the fact that their child has been seriously injured and immediately observe the child at the accident scene can recover for emotional

4

distress." Corso, 119 N.H. at 649. Katherine Corso's parents were about fifty feet away in the kitchen of their home when she was negligently struck by a passing motorist. Id. As a result of the accident, Katherine was permanently disabled. Id. Neither parent saw the accident, but the mother heard a "terrible thud" outside the house, and the father heard his wife scream. Id. Both parents immediately saw their daughter lying in the street with serious injuries. Id.

Before Corso, we required a plaintiff alleging negligent infliction of emotional distress to be within the physical zone of danger around the defendant's negligent activities because "public policy compelled us to construct a legal barrier" to recovery for those individuals outside that zone. Id. at 650 (citing, inter alia, Jelley v. LaFlame, 108 N.H. 471 (1968)). We were concerned that, by abandoning the zone of danger rule, we would "expose a defendant to liability that extended far beyond his culpability." Id. at 653. In Corso, however, we concluded that "this concern must be weighed against a plaintiff's serious emotional injury that is directly caused by [a] defendant's negligence," recognizing that "freedom from mental distress is an interest that is today worthy of legal protection." Id. at 652, 653. "The balance," we said, "can be maintained by carefully defining the foreseeability factors that are to be applied." Id. at 653. The foreseeability factors include geographic proximity to the accident scene, contemporaneous perception of the accident, and a close relationship between the plaintiff and the third party. Id. at 653-54. These foreseeability factors constitute one prong of the three main elements of negligent infliction of emotional distress: (1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms. See O'Donnell v. HCA Health Servs. of N.H., 152 N.H. 608, 611 (2005).

As the United States Court of Appeals for the First Circuit has observed, Corso's "perimeters have been vigilantly policed" by this court in subsequently decided cases. Kassel v. Gannett Co., Inc., 875 F.2d 935, 949 (1st Cir. 1989). Indeed, we "have continued to narrowly construe Corso." Graves v. Estabrook, 149 N.H. 202, 206 (2003); see, e.g., Wilder v. City of Keene, 131 N.H. 599, 603-04 (1989) (denying recovery when parents first perceived child's injuries at hospital because "they neither saw nor heard the accident" and thus lacked geographic and temporal proximity to it); Nutter v. Frisbie Mem. Hosp., 124 N.H. 791, 793, 795-96 (1984) (denying recovery when parents first perceived deceased child at hospital because they were not "close enough to experience the accident at first hand"); see also St. Onge, 154 N.H. at 772-73 (denying recovery because plaintiff was not "closely related" to the injured third party); Douglas v. Fulis, 138 N.H. 740, 743-44 (1994) (denying recovery when defendant was strictly liable rather than negligent).

This case arises in a distinctly different factual setting than an automobile accident because it involves allegations of medical malpractice,

5

specifically, negligent misdiagnosis.  Resolution of this appeal turns on the meaning of the term "accident" as used in Corso.

The defendants argue that the term "accident" refers to a defendant's negligent conduct, and, therefore, under the facts of this case, the "accident" is the negligent misdiagnosis of Lisa's DVT.  Relying on a single sentence in Corso, the defendants contend that the relevant inquiry is whether there is a "relatively close connection in both time and geography between the negligent act and the resulting [emotional] injury."  Corso, 119 N.H. at 657.  The trial court agreed with this approach.  It granted summary judgment on the basis that the time between the defendants' negligent failure to diagnose Lisa's DVT, despite her complaints of DVT symptoms, and Marc's emotional distress was "simply too attenuated" to permit recovery.  Thus, the trial court regarded Corso as treating the "accident" and the defendant's negligent conduct as synonymous.

We read Corso differently.  Corso requires that a plaintiff's emotional distress "be directly attributable to the emotional impact of the plaintiff's . . . contemporaneous sensory perception of the accident and immediate viewing of the accident victim."  Id. at 656.  It also requires that, "at the time of the accident," the plaintiff be "close to the accident scene."  Id. at 657.  In applying these rules to the facts of Corso, we did not consider the plaintiffs' contemporaneous perception of the defendant's negligence.  Indeed, nothing in Corso suggests that the plaintiffs ever perceived the defendant's negligent operation of her automobile, and our discussion of the defendant's negligence was limited to a brief acknowledgement that she was driving negligently.  See id. at 649.  Furthermore, we did not consider the amount of time between the defendant's negligent operation of her automobile and the plaintiffs' resulting emotional distress.  See id. at 657-58.

Instead, our analysis centered on the event resulting from the defendant's negligence, namely the collision between the defendant's automobile and the plaintiffs' daughter.  We concluded that the plaintiffs satisfied the "contemporaneous sensory perception" requirement because the mother heard a "terrible noise" emanating from the collision and immediately saw her daughter lying seriously injured on the ground, and because the father heard his wife scream and immediately saw his daughter's injury.  Id. at 657.  We also determined that they satisfied the requirement of geographic proximity because they were inside their home approximately fifty feet away from the scene of the collision at the time it occurred.  Id. at 649, 657.  Thus, in the context of that case, we used the term "accident" to refer to a sudden, unexpected, and shocking event involving serious physical injury to the plaintiffs' daughter.  Id. at 658.

We have consistently applied this framework in subsequent cases.  Our analysis focuses on the plaintiff's contemporaneous perception of the accident

6

and proximity to the "accident scene" rather than the defendant's negligent conduct. See, e.g., Wilder, 131 N.H. at 604 ("The plaintiffs were not sufficiently close to the accident scene to experience a sensory perception of the event."); Nutter, 124 N.H. at 795 ("[T]he parent had to be close enough to experience the accident at first hand . . . ."). We are also not persuaded by the defendants' argument that our use of the term "negligent act," which appeared once in a single sentence in Corso, was intended to so narrowly limit the term "accident," which appears throughout the opinion and is central to its analysis. See Corso, 119 N.H. at 653-58.

For these reasons, we determine that the term "accident" in the context of bystander recovery for emotional harm refers to a sudden, unexpected, and shocking event involving serious physical injury to a third party. Here, the plaintiff alleges that he suffered severe emotional distress manifested by physical symptoms from contemporaneously perceiving the sudden, unexpected, and shocking suffering and death of his wife. Under these circumstances, Lisa's pulmonary embolism constituted the "accident" in line with Corso, Nutter, and Wilder.

We hold that the trial court erred in granting summary judgment to the defendants on the basis that Marc's emotional distress was too attenuated from the defendants' negligent conduct to permit recovery. Because of the procedural posture of this case, we go no further. On remand, the trial court shall apply the elements of negligent infliction of emotional distress in a manner consistent with this opinion.

Vacated and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred; BASSETT, J., dissented.

BASSETT, J., dissenting. We have, in the decades since Corso v. Merrill, 119 N.H. 647 (1979), narrowly construed that decision — that is, until today. See Graves v. Estabrook, 149 N.H. 202, 206 (2003) ("Our cases . . . have continued to narrowly construe Corso . . . ."); Wilder v. City of Keene, 131 N.H. 599, 605 (1989) ("We will not extend or modify the standard articulated [in Corso]."); Nutter v. Frisbie Mem. Hosp., 124 N.H. 791, 795-96 (1984) (declining to adopt rule that would expand liability under Corso); see also Kassel v. Gannett Co., Inc., 875 F.2d 935, 949 (1st Cir. 1989) (observing that we have "vigilantly policed" the perimeters of Corso). Despite acknowledging our history of vigilantly policing the boundaries of Corso, the court does precisely the opposite. The court's opinion is a sharp departure from our precedent and greatly expands liability for bystander claims of negligent infliction of emotional distress. Because I believe we must hold true to our practice of narrowly construing Corso, I would affirm the decision of the trial court. I therefore respectfully dissent.

7

I agree with the court's recitation of the material facts, the standard of review, and its decision to reach the merits of this appeal. My disagreement stems from the court's framing and analysis of the central legal issue and its reading of our prior cases. The court states: "Resolution of this appeal turns on the meaning of the term 'accident' as used in Corso." This articulation of the issue places undue emphasis on a single word. In my view, our task is not so narrow. Instead, I examine Corso and our subsequent cases — as a line of cases developing the law in this area — and apply them to the facts of this case.

At the outset, I stress that my reading of our precedent as outlined herein is not meant to diminish the significance of the emotional injury that we, as human beings, experience when our loved ones suffer. As this court and others have recognized, that we will all experience severe emotional distress as a result of the injury, death, illness, or suffering of our loved ones is an inescapable consequence of the human condition. See Nutter, 124 N.H. at 796; Thing v. La Chusa, 771 P.2d 814, 828-29 (Cal. 1989) (en banc). Although the reality of that emotional distress is undeniable, that does not make all such emotional injury compensable. This appeal concerns where the compensability line should be drawn.

As the court explains, a bystander claim for negligent infliction of emotional distress has three elements: (1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms. Only the element of foreseeability is at issue here. Under our case law, the requirement of foreseeability has three sub-factors, which we derived from an opinion of the California Supreme Court, Dillon v. Legg, 441 P.2d 912 (Cal. 1968) (en banc). See St. Onge v. MacDonald, 154 N.H. 768, 770 (2007) (acknowledging that we have adopted Dillon's three-factor foreseeability test). This appeal concerns only two of those foreseeability factors: the geographic proximity of the plaintiff to the "'scene of the accident,'" Corso, 119 N.H. at 653 (quoting Dillon, 441 P.2d at 920); and the temporal proximity between the "accident" and the emotional injury to the plaintiff resulting from the contemporaneous "sensory perception . . . [of] the accident" and the injury to the third party, id. at 657.

The court concludes that "accident" means "a sudden, unexpected, and shocking event involving serious physical injury to a third party" — not the defendant's negligent conduct. I disagree with this conclusion, and with the court's reading of Corso and our subsequent cases decided over a span of more than four decades.

The language used in Corso, including the word "accident," must be viewed in the context of the facts giving rise to that appeal. In both Corso and Dillon, the parent plaintiffs perceived, in real time, that their child had been seriously injured when hit by a car. See Corso, 119 N.H. at 649; Dillon, 441

8

P.2d at 914.  Given that both cases involved car accidents, it is not surprising that the word "accident" was used in the standard articulated in Dillon and adopted by our court in Corso.  The court errs when it places too much importance on that one word.

Although the precise meaning of "accident" as used in Corso is unclear if Corso is read without taking into account our subsequent cases, once Corso is read in conjunction with our subsequent cases, it becomes clear that "accident" means the defendant's negligent act.  When first stating the foreseeability factors, the court in Corso quoted Dillon to explain that the plaintiff must be near the "'scene of the accident'" and must experience an emotional impact from the "'contemporaneous observance of the accident.'"  Corso, 119 N.H. at 653 (quoting Dillon, 441 P.2d at 920).  Later in the opinion, the court summarized these same factors by saying, "The test of foreseeability requires a relatively close connection in both time and geography between the negligent act and the resulting [emotional] injury."  Id. at 657 (emphasis added).

The facts in Corso did not require the court to clarify whether "accident" and "the negligent act" are one and the same for purposes of this standard.  There, the defendant negligently caused a collision that directly and immediately resulted in injury to the plaintiffs' child.  See id. at 649.  The plaintiffs were nearby and contemporaneously perceived sounds related to the collision (mother heard the collision and father heard mother scream) and immediately saw that their daughter had been hit by the defendant's car and injured.  See id. at 649, 657-58.  Because "the accident" and the defendant's negligent conduct were virtually simultaneous and both were close in time and space to the plaintiffs' emotional harm, the result in Corso would have been the same whether "accident" meant the shocking "event" of the collision, or the defendant's negligent act of causing the collision.  There was also no question in Corso that the defendant had caused the injury to the loved one, see id. at 649, and the opinion in the case therefore did not need to address whether the plaintiff must, when perceiving the "accident," appreciate that the defendant's conduct is the cause of their loved one's injury.  Although Corso did not shed light on whether plaintiffs must be near to and contemporaneously observe the defendant's allegedly negligent conduct or, instead, must, as the court holds, observe a "shocking event involving serious physical injury to" their loved one, our purpose in adopting the standard was clear: to "carefully defin[e] the foreseeability factors" in order to balance, on one hand, the societal desire to provide recovery for plaintiffs' serious emotional injuries and, on the other hand, the need to prevent unlimited liability.  See id. at 653.

To understand how the Corso standard should be applied to honor these guiding purposes, I look to the two subsequent negligent infliction of emotional distress cases involving application of the foreseeability elements at issue here: Nutter and Wilder.  In both cases we construed Corso narrowly and denied

9

recovery — emphasizing the importance of limiting liability, despite our recognition of the very real emotional injuries experienced by the plaintiffs. In both cases, we also characterized Corso as requiring a close connection between the defendant's negligent act and the plaintiff's emotional injury.

Nutter involved a negligent infliction of emotional distress claim by parents based upon medical malpractice that resulted in their child's death. See Nutter, 124 N.H. at 793. The parents did not observe the child's death, but were informed of it after the fact. See id. On appeal, the plaintiffs acknowledged that, in order to find that they had stated a cause of action, the court would have to "expand the boundary of liability" set out in Corso. Id. at 794. We declined to do so. We explained that, in Corso, "we recognized the need for a clearly-defined boundary to liability in this area, where both foreseeability and causation become attenuated very gradually as the harm to the plaintiff becomes further and further removed from the defendant's negligent act." Id. at 795 (emphases added). We also relied upon our statements in Corso that the plaintiff must be "close enough to experience the accident at first hand, and that 'recovery will be denied if the plaintiff either sees the accident victim at a later time, or if the plaintiff is later told of the seriousness of the accident.'" Id. at 795-96 (quoting Corso, 119 N.H. at 657). Accordingly, in Nutter, we held that the fact that the plaintiffs had observed the injury to their child resulting from the alleged negligence — in that case, the child's body following her death — was insufficient. See id. at 796.

Five years later, in Wilder, we revisited our analyses in Nutter and Corso. Wilder, like Corso, involved bystander negligent infliction of emotional distress claims by the parents of a child who was injured when hit by a car. Wilder, 131 N.H. at 600. Unlike in Corso, however, the plaintiffs in Wilder were not present at the scene of the collision, nor did they perceive it as it happened. See id. Instead, they saw their son at the hospital approximately one hour after the collision while he was suffering from severe injuries and was near death. See id.

Similar to Nutter, we held that the plaintiffs could not meet the Corso standard because they observed only the injuries that resulted from the alleged negligence. See id. at 603-04. In so holding, we emphasized "our policy objective of preventing unlimited liability" and explicitly refused to "extend or modify the standard articulated" in Corso. Id. at 605. We also summarized the relevant Corso foreseeability factors as requiring "geographic proximity to the accident scene and a close connection in time between the negligent act and the resulting [emotional] injury." Id. at 602 (emphasis added).

In my view, these three cases, taken as a whole and representing a line of cases developing our jurisprudence in this area of law, emphasize the important policy of cabining liability, and advance that policy by applying the rule that there be a close connection in place and time between the defendant's

negligent act and the resulting emotional injury.  The result in each of the three cases comports with this rule: The plaintiffs' claims in Corso withstood a motion to dismiss because the plaintiffs contemporaneously perceived the defendant's negligent conduct of hitting the child with his vehicle.  Conversely, in Nutter and Wilder, the claims did not survive because the plaintiffs did not perceive the negligent act, only the resulting injury to the loved one.

This understanding of our case law is fully consonant with traditional negligence principles.  Generally, defendants will not be found negligent if they could not reasonably foresee that their conduct would result in injury to another.  Kellner v. Lowney, 145 N.H. 195, 198 (2000); Dillon, 441 P.2d at 921 (describing foreseeability as "what the ordinary man under such circumstances should reasonably have foreseen").  A defendant is more likely to foresee harm to a plaintiff who is present for and perceives the defendant's negligent act than to foresee harm to a plaintiff who perceives a "shocking event" that may be well removed in time and space from the defendant's allegedly negligent conduct.  See Dillon, 441 P.2d at 920-21.

I therefore believe the court is mistaken when it suggests that our case law supports the proposition that "accident" does not refer to the defendant's negligent conduct.  I think the court further errs when it dismisses our reference in Corso to the defendant's "negligent act," Corso, 119 N.H. at 657, as essentially meaningless, and ignores our use of that exact phrase in subsequent opinions.  As illustrated by my discussion of Nutter and Wilder, the court's reference in Corso to the defendant's "negligent act" is not a one-off.

I acknowledge that these foreseeability requirements, as I understand them, may be difficult to satisfy when a claim arises from medical or other professional negligence.  And they may be even more difficult to satisfy when the claim is for an allegedly negligent failure to treat or diagnose.  See Bird v. Saenz, 51 P.3d 324, 329 (Cal. 2002) ("Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders.").  This does not, however, mean that all bystander claims arising from medical negligence would inevitably fail.  For example, "a layperson who watched as a relative's sound limb was amputated by mistake might well have a valid claim . . . against the surgeon."  Id.  In such a circumstance, the plaintiff would have been close to and perceived the surgeon's conduct and, with the knowledge that the wrong limb was amputated, would have suffered direct emotional injury.[1]  See id.  This limited scope of recovery is consistent with the policy consideration of "avoid[ing] infinite liability."  Wilder, 131 N.H. at 603.  And, it must be

---

[1] To be clear, in order to prevail in a bystander claim for negligent infliction of emotional distress, a plaintiff need not be aware, at the time the plaintiff perceives the defendant's conduct, that the conduct is negligent — only that the defendant's act has caused harm to the plaintiff's loved one, thereby resulting in emotional injury to the plaintiff.  See Bird v. Saenz, 51 P.3d 324, 331 (Cal. 2002).

emphasized that, even in cases where there is no cognizable bystander claim for negligent infliction of emotional distress, a negligent defendant would not be insulated from liability. The defendant would remain liable for any negligent act that causes direct harm to the victim.

The court's opinion, by contrast, upends the delicate policy balance struck by the court in Corso — the need to avoid infinite liability weighed against the desire to compensate a plaintiff for the plaintiff's very real and significant emotional injury. See Corso, 119 N.H. at 653. The new rule will undoubtedly expand liability. For example, under the court's definition of "accident," Wilder may well have been decided differently. In that case, there were arguably two "sudden, unexpected, and shocking event[s] involving serious physical injury to a third party": the collision of the defendant's car with the child, and the child's visible suffering and ultimate death. See Wilder, 131 N.H. at 600. The parents' contemporaneous observation of their child's suffering and their resulting emotional injury, see id., would arguably have been compensable under the court's expanded definition of "accident." In short, the court's new rule will, as we explained in Wilder, "truly let the genie out of the bottle." Id. at 605.

Indeed, the California Supreme Court, interpreting and applying Dillon, refused to go where the court now chooses to go. Two decades after deciding Dillon, the California Supreme Court observed that the decision had resulted in "ever widening circles of liability," and refined the Dillon standard. Thing, 771 P.2d at 819. In Thing, the court emphasized that, since Dillon, it had consistently required that the plaintiff be "present at the scene of the injury producing event at the time it occurs and [be] then aware that it is causing injury to the victim." Id. at 829. In Thing and subsequent cases, the court made clear that "accident" as used in Dillon and clarified as the "injury-producing event" in Thing is — and always had been — the defendant's negligent conduct. See id. at 815, 829-30 (plaintiff could not recover because she "did not observe defendant's conduct" — striking the child with his car — "and was not aware that her son was being injured"); Bird, 51 P.3d at 328-29, 332 (plaintiffs could not recover as bystanders for claim based on medical negligence because they did not perceive the defendant's transection of their mother's blood vessel during surgery, nor the subsequent failure to diagnose and treat that injury). The California Supreme Court's clarification of the applicable standard in Thing provides further support for my reading of our own standard, which was derived from California law. We should take heed of California's experience: a cautionary tale that weighs in favor of a narrow construction of the Corso standard.

For all of these reasons, I dissent. In my view, under our case law, the foreseeability factors at issue here require geographic and temporal proximity between the defendant's negligent act and the plaintiff's injury. The plaintiff must show: geographic proximity of the plaintiff to the defendant's negligent

12

act; and a close temporal connection between the defendant's negligent act and the emotional injury to the plaintiff that is the result of the plaintiff's contemporaneous sensory perception of the defendant's act and the injury to the plaintiff's loved one. See Corso, 119 N.H. at 653, 657; see also Wilder, 131 N.H. at 602; Nutter, 124 N.H. at 795. Applying this standard in this case, I would affirm the trial court.

In the complaint, the plaintiff alleges that the defendants were negligent in that they failed to, among other things, recognize the signs and symptoms of DVT reported by the plaintiff's wife and failed to recommend or order appropriate testing. It is undisputed for the purposes of summary judgment that this allegedly negligent conduct occurred on January 15 with respect to Dr. Killie, and January 12 and January 17 with respect to Apple Therapy. There is no allegation that the plaintiff suffered emotional injury as a result of his contemporaneous sensory perception of the allegedly negligent acts occurring during his wife's medical appointments on January 12, 15, or 17. Rather, the plaintiff claims that his contemporaneous perception of "the suffering and death of his wife" — which occurred later in the day on January 17 — "caus[ed] him to experience severe emotional distress manifested by physical symptoms." The plaintiff's allegations and evidence therefore demonstrate that there was not a sufficiently close temporal connection between the defendants' negligent acts and the emotional harm he suffered.

In sum, I believe that the court's opinion is an unwarranted and stark departure from our four-decades-long practice of narrowly construing Corso. The opinion significantly expands the scope of liability for bystander claims of negligent infliction of emotional distress. The new paradigm will not only affect the medical profession, but any business, trade, or profession in which the consequences of negligence — the harm to a loved one — could cause emotional injury to a family member days, weeks, months, or years after the negligent conduct. Cf. Fortman v. Förvaltningsbolaget Insulan AB, 151 Cal. Rptr. 3d 320, 321, 331 (Ct. App. 2013) (affirming summary judgment for defendant manufacturers of scuba equipment because plaintiff did not, when observing the injury to her brother, have a contemporaneous awareness that his injury was caused by the defendant's defective product). As a result of the court's opinion in this case, and its failure to "vigilantly police" the boundaries of Corso, manufacturers, homebuilders, tradespeople, architects, engineers, lawyers, medical providers, and other professionals will have vastly increased exposure to liability for bystander claims for negligent infliction of emotional distress. I respectfully dissent.